IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARYN PECORELLA-FABRIZIO and | : | |
| ANDREW FABRIZIO, | : | Civil Action No. 3:08-cv-00348 |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BOHEIM, in his official | : | |
| and individual capacity, and POCONO | : | |
| MOUNTAIN REGIONAL POLICE | : | |
| DEPARTMENT, | : | |
| Defendants | : | |

**MEMORANDUM**

This suit was initially assigned to the Honorable James Munley.  On March 31, 2011, the matter was reassigned to this Court.  Presently pending before the Court is Defendants' motion for summary judgment.  (Doc. No. 96.)  The motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the Court will grant Defendants' motion.

**I.     BACKGROUND**

Plaintiffs Caryn Pecorella-Fabrizio and Andrew Fabrizio were the sole members of Kozy Nozes Dog Grooming & More, LLC ("Kozy Nozes"), a Pennsylvania limited liability company, which operated its business from a store located in Tobyhanna Township, Pennsylvania.  (Doc. No. 98 ¶¶ 1, 3; Doc. No. 105 ¶¶ 1, 3.)  Ms. Pecorella-Fabrizio managed the daily operations of the Kozy Nozes store, and Mr. Fabrizio usually inspected the store on weekends.  (Doc. No. 96-8 at 6; Doc. No. 105 ¶ 28; Doc. No. 106 at 14.)  Plaintiffs kept their personal finances separate from those of Kozy Nozes and did not personally own the equipment and inventory inside the store.  (Doc. No. 98 ¶¶ 7-9; Doc. No. 96-4 at 10-11; Doc. No. 105 ¶¶ 7-9.)

From June 2007 to December 31, 2007, Kozy Nozes employed Bonnie D'Angelo as an

independent contractor.  (Doc. No. 98 ¶¶ 18, 20; Doc. No. 105 ¶¶ 18, 20.)  Some independent

contractors, including Ms. D'Angelo, had keys to the store.  (Doc. No. 96-4 at 19; Doc. No. 105-

1 at 3.)  After terminating Ms. D'Angelo's employment, Ms. Pecorella-Fabrizio contacted

Atlantic Central Station ("ACS"), the company that provided the alarm system for the Kozy

Nozes store, and instructed ACS to remove Ms. D'Angelo's access codes.  (Doc. No. 96-4 at

21.)

On January 3, 2008, at approximately 12:00 p.m., Ms. D'Angelo spoke with Defendant

Christopher Boheim, a Pocono Mountain Regional Police Department ("PMRPD") detective, at

the PMRPD station.  (Doc. No. 96-15 at 4; Doc. No. 98 ¶¶ 24-25; Doc. No. 105 ¶¶ 24-25.)  Ms.

D'Angelo requested that an officer accompany her to the Kozy Nozes store while she retrieved

personal items that she had left there.  (Doc. No. 96-4 ¶ 5; Doc. No. 105 ¶ 26.)  Ms. D'Angelo

showed Defendant Boheim receipts for the items she intended to retrieve.[1]  (Doc. No. 96 ¶ 28;

Doc. No. 105 ¶ 26; Doc. No. 105-2 at 8.)  According to Defendant Boheim, Ms. D'Angelo also

told him that she and Ms. Pecorella-Fabrizio were business partners.  (Doc. No. 96-15 at 4; see

also Doc. No. 105-3 at 4.)  Defendant Boheim "advised her that [his] role was going to [be to]

provide her with a . . . police presence on the scene, should there be a dispute or a problem."[2]

(Doc. No. 105-2 at 11.)

Following this conversation, Defendant Boheim drove to the Kozy Nozes store and

---

[1] Ms. D'Angelo's affidavit states: "This equipment included clippers and blades, a dog house dryer, two other dryers, three brushes, and three dog grooming caddies.  I had also purchased two dog grooming tables . . . that I kept at Kozy Nozes."  (Doc. No. 96-10 ¶ 2.)

[2] Ms. D'Angelo testified that, before speaking with Defendant Boheim, a former Kozy Nozes employee advised her to request a police escort to the store because of Ms. Pecorella-Fabrizio's "crazy" and "evil" behavior.  (Doc. No. 96-13 at 4; Doc. No. 98 ¶ 23.)

parked his vehicle in a position from which he could view persons entering and leaving the store. (Doc. No. 96-15 at 6; Doc. No. 105-2 at 9.)  Ms. D'Angelo and her husband drove to the store in their own vehicle.  (Doc. No. 96-10 ¶ 9.)  After they arrived, Ms. D'Angelo found that the store was closed.  (Doc. No. 105 ¶ 23.)  Thereafter, she informed Defendant Boheim that she would enter the store by using a key that Ms. Pecorella-Fabrizio had given her.  (Doc. No. 96-13 at 5; Doc. No. 98 ¶¶ 31-32; Doc. No. 105 ¶¶ 31-32.)  Ms. D'Angelo and her husband then used that key to enter the store and proceeded to remove items from the store, including grooming tables and brushes.  (Doc. No. 96-10 ¶ 7; Doc. No. 96-15 at 5; Doc. No. 98 ¶ 33; Doc. No. 105 ¶ 33.) According to Defendant Boheim, Ms. D'Angelo brought the items over to him and showed him her receipts again.  (Doc. No. 96-15 at 5.)

At some point after Ms. D'Angelo and her husband entered the store, the store's alarm sounded, and ACS was notified of the alarm activation.  (Doc. No. 98 ¶ 34; Doc. No. 100, Ex. J; Doc. No. 105 ¶ 34.)  The Monroe County Control Center ("MCCC") contacted Defendant Boheim via radio dispatch to inform him of the activation.  (Doc. No. 96-15 at 7.)  Defendant Boheim could not recall whether MCCC contacted him after he had left the scene or when he was about to leave the scene, or whether he informed MCCC that he currently was or had just been at the scene with a key holder.  (Id.; Doc. No. 105-2 at 3-5.)  According to Defendant Boheim, he was not suspicious of the activation because people often "trip alarms accidentally when they're closing a door" or "hit the incorrect key code."  (Doc. No. 105-2 at 4-5.)  After ACS was informed that an officer was on the scene, it deactivated the alarm remotely and suspended further investigation of the activation.  (Doc. No. 105 ¶ 37; Doc. No. 105-1 at 9.)

ACS and Defendant PMRPD were later informed that Ms. D'Angelo was no longer

authorized to enter the Kozy Nozes store.  (Doc. No. 100, Ex. J.; Doc. No. 105 ¶ 37.)  Ms. Pecorella-Fabrizio, after learning of the alarm activation, arrived at the store, where she spoke with two police officers.  (Doc. No. 105-1 at 4-5.)  Although Ms. D'Angelo and her husband were still in the parking lot, the officers did not permit Ms. Pecorella-Fabrizio to view the property in the D'Angelos' vehicle.  (Id. at 5.)  Ms. Pecorella-Fabrizio later filed a claim with Allstate Insurance Company ("Allstate") for the items that were allegedly wrongfully taken from the store, and Allstate issued checks to Kozy Nozes in the amounts of $1,000 on January 28, 2008 and $2,645.58 on February 25, 2008.  (Doc. No. 96-4 at 27, 31; Doc. Nos. 96-18, 96-19.)

Plaintiffs filed the complaint in this action on February 25, 2008, alleging that Defendant Boheim violated their right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments and that Defendant Boheim and Defendant PMRPD violated their right to procedural due process under the Fifth and Fourteenth Amendments.  (Doc. No. 1 at 6-10.)  Plaintiffs also assert state law claims for negligence, trespass, conversion, and unlawful search and seizure against Defendant Boheim.  (Id. at 11.)  Further, they allege that Defendant PMRPD is liable on the state law claims for negligence and unlawful search and seizure under the doctrine of respondeat superior.  (Id.)  On December 15, 2008, Judge Munley dismissed all claims brought against Defendant Boheim in his official capacity as well as Plaintiffs' procedural due process claims brought under the Fifth Amendment.[3]  (Doc. No. 23 at 5-6.)  Defendants filed a motion for summary judgment and statement of uncontested facts on July 12, 2011 (Doc. Nos. 96, 98), and a brief in support on July 21, 2011 (Doc. No. 103).  On August 11,

---

[3] Judge Munley also dismissed Plaintiffs' claim for intentional infliction of emotional distress, to the extent that one was alleged.  (Doc. No. 23 at 10.)

2011, Plaintiffs filed a brief in opposition and statement in opposition to Defendants' statement of uncontested facts.  (Doc. Nos. 105, 106.)  Defendants filed a reply brief on August 25, 2011. (Doc. No. 109.)

## II.     STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party here has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted.

Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving

party must provide, a court should grant summary judgment where the non-movant's evidence is

merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be

more than a scintilla of evidence supporting the non-moving party and more than some

metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for

summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke

Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   STANDING

As a threshold matter, Defendants contend that Plaintiffs lack individual standing to sue

Defendants because it was Kozy Nozes's store that was searched and property that was taken,

and, thus, any constitutional violations were suffered by Kozy Nozes and any injuries to

Plaintiffs occurred only because of their relationship with Kozy Nozes.  (Doc. No. 103 at 20-23.)

It is well settled that corporations may avail themselves of the Fourth Amendment's protections

against unlawful searches and seizures.  See G.M. Leasing Corp. v. United States, 429 U.S. 338,

353 (1977).  An individual, however, generally "cannot assert the corporation's Fourth

Amendment rights absent a showing that he had an independent privacy interest in the goods

seized or the area searched."  United States v. Vicknair, 610 F.2d 372, 379 (5th Cir. 1980).

"Fourth Amendment standing requires that the individual challenging the search have a

reasonable expectation of privacy in the property searched and that he manifest a subjective

expectation of privacy in the property searched."  United States v. Kennedy, 638 F.3d 159, 163

(3d Cir. 2011) (citation and internal quotation marks, ellipses, and brackets omitted).

Plaintiffs argue that Ms. Pecorella-Fabrizio had a reasonable expectation of privacy in the

Kozy Nozes store because she owned and managed the store.  (Doc. No. 106 at 13-15.)

Defendants counter that Plaintiffs admitted that they did not personally own any of the property

in the store and, therefore, lack standing to sue Defendants in their individual capacities.  (Doc.

No. 109 at 1-2; see also Doc. No. 98 ¶¶ 9-10; Doc. No. 105 ¶¶ 9-10.)  Ms. Pecorella-Fabrizio,

however, testified that Ms. D'Angelo took her cash box containing $80.00 from the store.  (Doc.

No. 105-1 at 5-6.)  Although standing is generally a threshold inquiry, in light of the Court's

determination below that Defendants are, in any event, entitled to summary judgment on the

merits of Plaintiffs' federal law claims, resolution of the standing issue would not affect the

ultimate disposition of the case.  Accordingly, for purposes of addressing the instant motion, the

Court will assume that Plaintiffs have standing to bring this action.[4]

## IV.    EVIDENTIARY ISSUE

Defendants seek to exclude a statement made by Sylvia Williams, who is now deceased,

to Ms. Pecorella-Fabrizio, indicating that Ms. Williams saw a police officer enter the Kozy

Nozes store on January 3, 2008.  (Doc. No. 109 at 2-5.)  For purposes of summary judgment, the

Court may not consider hearsay statements that would not be admissible at trial.  Smith v. City of

---

[4] The Court also notes that Plaintiffs do not address the issue of whether Mr. Fabrizio has standing in their brief in opposition.  Although Plaintiffs state that "Plaintiffs clearly had an expectation of privacy within their business," their specific arguments regarding standing relate only to Ms. Pecorella-Fabrizio.  (Doc. No. 106 at 14-15.)  Nevertheless, in light of the Court's determination that Defendants are entitled to summary judgment on the merits of Plaintiffs' federal law claims, the Court will assume, arguendo, that both Ms. Pecorella-Fabrizio and Mr. Fabrizio have standing to sue Defendants in their individual capacities.

Allentown, 589 F.3d 684, 693 (3d Cir. 2009).

Plaintiffs contend that the statement is admissible under Federal Rule of Evidence 807.[5]

Rule 807 permits the admission of hearsay statements, otherwise inadmissible under Rules 803

or 804, but possessing equivalent circumstantial guarantees of trustworthiness, if the Court finds:

> that (A) the statement is offered as evidence of a material fact; (B) the
> statement is more probative on the point for which it is offered than
> any other evidence which the proponent can procure through
> reasonable efforts; and (C) the general purposes of these rules and the
> interests of justice will best be served by admission of the statement
> into evidence.

Fed. R. Evid. 807.  Rule 807 is "to be used only rarely, and in exceptional circumstances" and is

meant to "apply only when certain exceptional guarantees of trustworthiness exist and when high

degrees of probativeness and necessity are present."  United States v. Bailey, 581 F.2d 341, 347

(3d Cir. 1978) (addressing the residual hearsay exceptions contained in Rules 803(24) and

804(b)(5), which were combined and transferred to the new Rule 807 in 1997); see also Bohler-

Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 112 n.17 (3d Cir. 2001).  The United

States Court of Appeals for the Third Circuit has recognized several factors to consider in

assessing the guarantees of trustworthiness, including whether:

> (1) the declarant was known and named, (2) the statement was made
> under oath and penalty of perjury, (3) the declarant was aware of the
> pending litigation at the time he made the declaration and thus knew
> that his assertions were subject to cross examination, (4) the
> statement[] were based on personal observation, (5) the declarant . .
> . had no financial interest in the litigation's outcome, (6) the
> [statement] was corroborated . . ., and (7) [the declarant's] position
> and background qualified him to make the assertion[].

---

[5] Plaintiffs mistakenly cited to Federal Rule of Civil Procedure 807 to support their
contention that the statement is admissible.  (Doc. No. 106 at 17.)

8

Bohler-Uddeholm Am., Inc., 247 F.3d at 113; see also United States v. Wilson, 281 F. App'x 96, 99 (3d Cir. 2008).

After balancing these factors, the Court concludes that the statement is not admissible under Rule 807.  Some of the factors do weigh in favor of finding trustworthiness: Ms. Williams is known and named, had no financial interest in this litigation, and presumably made the statement based on her personal observation.  These factors, however, are outweighed by the factors that compel the statement's exclusion.  First, the statement was neither made under oath nor subject to cross-examination, the traditional methods used to ensure trustworthiness.  See Lloyd v. Am. Export Lines, Inc., 580 F.2d 1179, 1192 (3d Cir. 1978).  Second, there is no evidence corroborating that Ms. Williams ever made the statement, and, as Defendants contend, the statement fails to actually identify Defendant Boheim as the officer who entered the Kozy Nozes store.  (Doc. No. 109 at 5.)

Further, in evaluating a statement's trustworthiness, "consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness."  Bailey, 581 F.2d at 349.  Ms. Pecorella-Fabrizio, who testified at her deposition that Ms. Williams made this statement, has an inherent bias in favor of admitting the statement, especially considering that it "is the only probative evidence" on this point.  (Doc. No. 106 at 19.)  Despite arguing that the admission of the statement is proper because Defendants may be able to rebut the statement through the testimony of other witnesses, Plaintiffs have failed to present evidence that any individual besides Ms. Williams witnessed anything of relevance on January 3, 2008.  (Id. at 18.)  Given the inherent bias of Ms. Pecorella-Fabrizio and the lack of any corroborating evidence, the reporting of the hearsay statement by Ms. Pecorella-Fabrizio is not reliable.

After weighing the factors and reviewing all of the circumstances, the Court concludes that the guarantees of trustworthiness do not support the admission of Ms. Williams's statement under Rule 807.[6]  Accordingly, the Court will not consider the statement for purposes of ruling on Defendants' motion for summary judgment.  See Smith, 589 F.3d at 693.

## V.     DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law because Plaintiffs have not set forth facts supporting the existence of a violation of their Fourth and Fourteenth Amendment right to be free from unlawful searches and seizures or a deprivation of their Fourteenth Amendment right to procedural due process.  (Doc. No. 96 ¶¶ 3, 5.)  Defendants also contend that Defendant Boheim is entitled to qualified immunity, and that Plaintiffs have not set forth facts establishing that their constitutional rights were violated as a result of a policy, practice, or custom of Defendant PMRPD.  (Id. ¶¶ 6-7.)  Further, they argue that Plaintiffs' state law claims are barred by the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541, et seq. (Id. ¶ 14.)  Finally, Defendants contend that Plaintiffs have not set forth facts supporting their claim for punitive damages.  (Id. ¶ 13.)  The Court will address each argument in turn.

### A.     Search and Seizure

Defendants argue that Plaintiffs have failed to set forth facts showing that their right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments was

---

[6] Because the Court concludes that the statement does not have "equivalent circumstantial guarantees of trustworthiness," the Court need not consider whether the other requirements of Rule 807 are satisfied.

violated.  Plaintiffs filed this claim pursuant to 42 U.S.C. § 1983.[7]  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation and internal quotation marks omitted).  Plaintiffs contend that Defendant Boheim violated the Fourth and Fourteenth Amendments because he illegally entered and searched the Kozy Nozes store without a warrant or probable cause.  (Doc. No. 106 at 16.)

The Fourth Amendment's protection against unlawful searches and seizures "proscribes only government action" and does not apply to searches or seizures by private individuals, even if they are unreasonable.  Skinner v. Railway Labor Execs.' Ass'n, 489 U.S. 602, 614 (1989); Reedy v. Evanson, 615 F.3d 197, 225 (3d Cir. 2010) (citing United States v. Jacobsen, 466 U.S. 109, 113 (1984)).  The threshold inquiry for a Fourth Amendment claim, therefore, is whether the government's conduct amounted to a "search."  United States v. Hartwell, 436 F.3d 174, 177 (3d Cir. 2006).  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  Kyllo v. United States, 533 U.S. 27, 33 (2001).  "A Fourth Amendment seizure of personal property occurs when there is some meaningful interference with an individual's possessory interests in that property."  Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001) (internal quotation marks omitted).

---

[7] Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.

Plaintiffs contend that there is a genuine dispute of material fact as to whether Defendant Boheim entered the store as well as to what extent he participated in a search of the store. (Doc. No. 106 at 19.)  However, as discussed, there is no admissible evidence demonstrating that Defendant Boheim even entered the store.  Thus, the Court, viewing the facts in the light most favorable to Plaintiffs, finds that the record of evidence does not reflect that Defendant Boheim searched the store or seized any property from it.

The remaining question, then, is whether Defendant Boheim's presence and actions taken while outside the store constitutes government action sufficiently implicating Fourth Amendment interests.  Although "[t]he presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate [F]ourth [A]mendment interests," Plaintiffs contend that Fourth Amendment interests were implicated because Ms. D'Angelo acted as an agent or instrument of Defendant Boheim. United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981); (Doc. No. 106 at 24-29.)  Further, Defendants assert that Defendant Boheim conspired with Ms. D'Angelo to unlawfully search and seize property from the Kozy Nozes store.  (Doc. No. 106 at 20-24.)  The Court will address each contention in turn.

1.    *Agent or Instrument of Defendant Boheim*

The Fourth Amendment "does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, [but] the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government."  Skinner, 489 U.S. at 614.  The United States Supreme Court has further explained:

> Whether a private party should be deemed an agent or instrument of
> the Government for Fourth Amendment purposes necessarily turns

12

on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances. The fact that the Government has not compelled a private party to perform a search does not, by itself, establish that the search is a private one.

Id. at 614-15 (internal citations and quotation marks omitted). The Third Circuit has not articulated a standard for assessing whether an individual acts privately or as an agent or instrument of the government. See United States v. Jackson, 617 F. Supp. 2d 316, 325 (M.D. Pa. 2008). Ten other courts of appeals, however, have articulated standards, focusing on some or all of the following factors, with the first two factors widely recognized as pertinent criteria: (1) whether the government knew of and acquiesced in the intrusive conduct;[8] (2) whether the individual intended to assist law enforcement or acted to further her own purposes;[9] (3) whether the individual acted at the government's request;[10] and (4) whether the government offered the

---

[8] See United States v. Bowers, 594 F.3d 522, 526 (6th Cir. 2010); United States v. Day, 591 F.3d 679, 683 (4th Cir. 2010); United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010); United States v. Silva, 554 F.3d 13, 18 (1st Cir. 2009) (articulating this factor as the "intent and the degree of control [the government] exercises over the search and the private party"); United States v. Ginglen, 467 F.3d 1071, 1074 (7th Cir. 2006); United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003); United States v. Souza, 223 F.3d 1197, 1201-02 (10th Cir. 2000); United States v. Dahlstrom, 180 F.3d 677, 682 (5th Cir. 1999) (articulating this factor as whether "the government knew the individual intended a search"); United States v. Young, 153 F.3d 1079, 1080 (9th Cir. 1998); United States v. Bennett, 709 F.2d 803, 805 (2d Cir. 1983).

[9] See Bowers, 594 F.3d at 526; Day, 591 F.3d at 683; Wiest, 596 F.3d at 910; Silva, 554 F.3d at 18; Ginglen, 467 F.3d at 1074; Steiger, 318 F.3d at 1045; Souza, 223 F.3d at 1201-02); Young, 153 F.3d at 1080.

[10] See Wiest, 596 F.3d at 910; Silva, 554 F.3d at 18 (articulating this factor as "the extent of the government's role in instigating or participating in the search"); Ginglen, 467 F.3d at 1074 (identifying this factor as another "useful criteri[on]"); Souza, 223 F.3d at 1201 (articulating this factor as whether the government "instigate[s], orchestrate[s], encourage[s] or exceed[s] the scope of the private search"); Dahlstrom, 180 F.3d at 682.

individual a reward or other compensation.[11]  Given the consensus among the courts of appeal

regarding the appropriate inquiry, the Court will apply the factors to the instant case.

First, with respect to Defendant Boheim's knowledge of and acquiescence in Ms.

D'Angelo's intrusive conduct, Plaintiffs argue that Defendant Boheim knew of and "went along

with" Ms. D'Angelo's plan to enter the Kozy Nozes store, thereby ensuring that "she could

break into a [closed] business."  (Doc. No. 106 at 25-26.)  Although it is not disputed that

Defendant Boheim knew that Ms. D'Angelo planned to, and did, enter the store (Doc. No. 96-10

¶ 5; Doc. No. 105-2 at 8), the relevant inquiry is not whether Defendant Boheim had knowledge

that Ms. D'Angelo entered the store; rather, it is whether he knew that Ms. D'Angelo's entry

constituted intrusive conduct.  See Wiest, 596 F.3d at 910 (finding that the defendant's

girlfriend's stepmother did not act as an agent or instrument of the government where the

government had knowledge of the stepmother's conduct but such conduct was not intrusive).

The record reflects that Defendant Boheim's beliefs that Ms. D'Angelo was authorized to enter

the store and that the alarm activation was accidental were reasonable given that Ms. D'Angelo

had a key to the store and told him that she was in a business relationship with Ms. Pecorella-

Fabrizio.[12]  (Doc. No. 96-

---

[11] See Ginglen, 467 F.3d at 1074 (identifying this factor as another "useful criteri[on]"); Dahlstrom, 180 F.3d at 682.

[12] Plaintiffs argue that Ms. D'Angelo's use of the past tense in informing Defendant Boheim that she "was" a business partner with Ms. Pecorella-Fabrizio – as opposed to stating that she "is" a business partner – indicated to Defendant Boheim that Ms. D'Angelo was no longer authorized to enter the Kozy Nozes store.  (Doc. No. 106 at 26.)  Further, they argue that, because Defendant Boheim learned that Ms. Pecorella-Fabrizio ran the Kozy Nozes store when he responded to a dispute at the store in 2006, he was aware that Ms. D'Angelo was not a partner with a right to access the store.  (Doc. No. 106 at 27-28; see also Doc. No. 96-9.)  The Court finds that these arguments are without merit.  First, Defendant Boheim testified more than once

15 at 8; Doc. No. 105-2 at 8; Doc. No. 105-3 at 3-4.)  Accordingly, the Court finds no record

evidence from which a reasonable fact finder might conclude that Defendant Boheim had

knowledge of or acquiesced in intrusive conduct.

Regarding the second factor, Plaintiffs have not set forth any evidence demonstrating that

Ms. D'Angelo was attempting to assist law enforcement or that she intended to serve anyone's

interests but her own.  In fact, Plaintiffs argue that Ms. D'Angelo had "a motive to mess with

Kozy Nozes."  (Doc. No. 106 at 20.)  With respect to the third and fourth factors, the record of

evidence is devoid of any evidence that Ms. D'Angelo acted at Defendant Boheim's request or

was offered a reward or other compensation.  In the absence of any such evidence, Plaintiffs'

contention that Ms. D'Angelo acted as an agent or instrument of Defendant Boheim must fail.

Although none of the factors weigh in favor of a finding that Ms. D'Angelo acted as an

agent or instrument of Defendant Boheim, the Court will briefly consider Plaintiffs' argument

that if the Court were to apply the standards adopted by the First or Fourth Circuits, it would

make a contrary finding.  (Doc. No. 106 at 25.)  The Fourth Circuit has stated that it has "never

articulated a specific 'test,'" for determining whether a private search triggers Fourth

Amendment protections, but that it has "embraced" a two-factor approach, compressing "(1)

whether the Government knew of and acquiesced in the private search; and (2) whether the

private individual intended to assist law enforcement or had some other independent motivation"

into "one highly pertinent consideration."  United States v. Jarrett, 338 F.3d 339, 344-45 (4th

---

that he believed that Ms. D'Angelo was in an active business relationship with Ms. Pecorella-
Fabrizio.  (Doc. No. 96-15 at 4; Doc. No. 105-2 at 8.)  Plaintiffs have presented no evidence
contradicting this testimony.  Second, the fact that Defendant Boheim had one interaction with
Ms. Pecorella-Fabrizio in 2006 does not demonstrate that he believed that Ms. Pecorella-
Fabrizio was the only individual authorized to enter the store.

Cir. 2003) (internal brackets and citations omitted).  The First Circuit has recognized that three

factors – "the extent of the government's role in instigating or participating in the search, its

intent and the degree of control it exercises over the search and the private party, and the extent

to which the private party aims primarily to help the government or to serve its own interest" –

may be pertinent in different circumstances.  Silva, 554 F.3d at 18.  The Court, having already

analyzed these factors – or substantially similar variations of them – finds that there is no record

evidence to support Plaintiffs' contention that Ms. D'Angelo acted as an agent or instrument of

Defendant Boheim, thereby implicating Fourth Amendment protections.

            2.      *Conspiracy*

      Plaintiffs also contend that Defendant Boheim unlawfully conspired with Ms. D'Angelo

to search and seize property from the Kozy Nozes store.[13]  (Doc. No. 106 at 20-24.)  "In order to

prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under

color of state law conspired to deprive him of a federally protected right."  Ridgewood Bd. of

Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), superseded by statute on other

grounds as stated in P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009); see

also Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy,

there must be a meeting of the minds") (internal quotation marks omitted).  However, a plaintiff

cannot proceed with a conspiracy claim under § 1983 without establishing an underlying

violation of a constitutional right.  See White v. Brown, 408 F. App'x 595, 599 (3d Cir. 2010)

---

[13] Defendants argue that Plaintiffs have improperly raised this argument in opposition to
Defendants' motion for summary judgment because they did not plead a claim for conspiracy in
their complaint.  (Doc. No. 109 at 7-8.)  The Court need not address this contention because even
if Plaintiffs had pled a conspiracy claim in their complaint, such a claim fails on the merits.

(finding that the district court properly granted summary judgment on White's conspiracy claims brought under § 1983 "because White cannot establish an underlying violation of his constitutional rights"); <u>Young v. New Sewickley Twp.</u>, 160 F. App'x 263, 267 (3d Cir. 2005) (stating that in order to proceed with a conspiracy claim under § 1983, a plaintiff must show that she was deprived of a constitutional right); <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995).

As discussed, Plaintiffs have failed to present evidence demonstrating a violation of their Fourth Amendment right to be free from unlawful searches and seizures. Thus, Plaintiffs' conspiracy claim must fail. Further, the record of evidence does not demonstrate that there was any "meeting of the minds" between Defendant Boheim and Ms. D'Angelo to violate Plaintiffs' constitutional rights.[14] At most, Plaintiffs have made a conclusory allegation that Defendant Boheim agreed to unlawfully assist Ms. D'Angelo by deflecting an investigation of the alarm activation, which is unsupported by the record evidence.

The Court has found no record evidence to support Plaintiffs' contentions that Ms. D'Angelo's search of the store implicates Fourth Amendment protections or that Defendant Boheim unlawfully conspired with Ms. D'Angelo. Accordingly, the Court concludes that Defendants' motion for summary judgment with respect to Plaintiffs' unlawful search and seizure claim brought pursuant to 42 U.S.C. § 1983 must be granted.

---

[14] Plaintiffs cite to <u>Gale v. Storti</u>, 608 F. Supp. 2d 629 (E.D. Pa. 2009), to support their contention that there was an agreement between Defendant Boheim and Ms. D'Angelo to violate Plaintiffs' constitutional rights. (Doc. No. 106 at 23-24.) In <u>Gale</u>, the court, in ruling on a motion to dismiss, merely found that the plaintiffs had alleged facts sufficient to <u>state a claim</u> for conspiracy. 608 F. Supp. 2d at 635. In the instant case, the Court must rule on a motion for summary judgment and, therefore, determine whether Plaintiffs have "rebut[ted] [Defendant's] motion with <u>facts in the record</u>." <u>Colkitt</u>, 455 F.3d at 201 (emphasis added). Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to do so.

**B.      Procedural Due Process**

Next, Plaintiffs contend that Defendants violated their Fourteenth Amendment right to

procedural due process.  To state a procedural due process claim under § 1983, Plaintiffs must

allege that (1) they were deprived of an interest encompassed within the Fourteenth

Amendment's protection of life, liberty, and property; and (2) the procedures available to

Plaintiffs did not provide due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

"State action is a threshold issue in a Fourteenth Amendment claim."  Abbott v. Latshaw, 164

F.3d 141, 146 (3d Cir. 1998); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50

(1999) ("[The] under-color-of-state-law element of § 1983 excludes from its reach 'merely

private conduct, no matter how discriminatory or wrongful.'") (quoting Blum v. Yaretsky, 457

U.S. 991, 1002 (1982)).  "[T]he deprivation must be caused by the exercise of some right or

privilege created by the State . . . or by a person for whom the state is responsible," and "the

party charged with the deprivation must be a person who may fairly be said to be a state actor."

Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

As discussed, the Court has found that Plaintiffs have failed to present evidence showing

that Defendant Boheim's presence and actions taken while outside the Kozy Nozes store support

a Fourth Amendment violation.  Because Plaintiffs have failed to establish the requisite state

action necessary to maintain a procedural due process claim, the Court will grant Defendants'

motion with respect to this claim.

**C.      Qualified Immunity**

In addition to arguing that Plaintiffs have failed to establish as a matter of law that their

constitutional rights were violated, Defendant Boheim asserts that he is entitled to qualified

immunity.  (Doc. No. 96 ¶ 7; Doc. No. 103 at 34-39.)  As discussed, the Court has concluded

that Defendant Boheim is entitled to summary judgment on Plaintiffs' constitutional claims.

Accordingly, the Court need not address the argument that Defendant Boheim is entitled to

qualified immunity.

### D.      Liability of Defendant PMRPD

Next, Plaintiffs claim that Defendant PMRPD is subject to municipal liability because

Defendant Boheim followed department policy "in enabling Ms. D'Angelo's scheme."  (Doc.

No. 106 at 35.)  Municipal liability under § 1983 is available only under certain circumstances.

"[L]ocal governing bodies . . . can be sued directly under section 1983 . . . where . . . the action

that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers."  Monell v.

Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Because the Court has found that the actions of

Defendant Boheim did not violate Plaintiffs' constitutional rights, there can be no liability

imposed on Defendant PMRPD for his actions.  See Brown v. Commonwealth of Pa., Dep't of

Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to

be municipal liability, there still must be a violation of the plaintiff's constitutional rights.").

### E.      Supplemental State Law Claims

Next, Plaintiffs claim that Defendant Boheim is liable under state law for trespass,

conversion, negligence, and unlawful search and seizure.  (Doc. No. 1 ¶ 11.)  Further, they allege

that Defendant PMRPD is liable on the state law claims for negligence and unlawful search and

seizure under the doctrine of respondeat superior.  (Id.)  Because the Court will grant summary

judgment on each of the federal law claims in this case, it declines to exercise supplemental

jurisdiction over the state law claims.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 ("If it appears that the federal claim . . . could be disposed of on a motion for summary judgment . . . then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.").  Accordingly, the Court will dismiss these claims without prejudice.

### F.      Punitive Damages

Finally, Plaintiffs request that the Court order Defendant Boheim to pay punitive damages.  (Doc. No. 1 at 12.)  Because the Court will grant summary judgment on each of the federal law claims in this case and decline to exercise supplemental jurisdiction over the state law claims, there is no surviving claim for which punitive damages could be available.

## VI.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment (Doc. No. 96), and will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARYN PECORELLA-FABRIZIO and** | : | |
| **ANDREW FABRIZIO,** | : | **Civil Action No. 3:08-cv-00348** |
| **Plaintiffs** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHRISTOPHER BOHEIM, in his official** | : | |
| **and individual capacity, and POCONO** | : | |
| **MOUNTAIN REGIONAL POLICE** | : | |
| **DEPARTMENT,** | : | |
| **Defendants** | : | |

**ORDER**

**NOW**, on this 16th day of November 2011, **IT IS HEREBY ORDERED** that

Defendants' motion for summary judgment (Doc. No. 96) is **GRANTED**; and pursuant to 28

U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs'

state law claims against Defendants, and those claims are **DISMISSED WITHOUT**

**PREJUDICE**.  The Clerk of Court is directed to enter judgment for Defendants against

Plaintiffs on Plaintiffs' federal constitutional claims and close the case.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania